437 A.2d 999

COMMONWEALTH of Pennsylvania, Appellant,

v.

Richard C. SCHOMAKER.

COMMONWEALTH of Pennsylvania,

v.

Richard C. SCHOMAKER, Appellant.

Superior Court of Pennsylvania.

Argued Nov. 10, 1980.

Filed Nov. 30, 1981.

80

H. David Rothman, Pittsburgh, for appellant in No. 1595 and for appellee in No. 1600.

F. Peter Dixon, Assistant District Attorney, Pittsburgh, for Commonwealth, appellant in No. 1600 and appellee in No. 1595.

Before PRICE, CAVANAUGH and HOFFMAN, JJ.

HOFFMAN, Judge:

These are cross appeals from an order granting a new trial on a charge of theft by deception.[1] In its appeal, the Commonwealth contends the jury was properly instructed and therefore seeks reinstatement of the jury's verdict. Defendant seeks arrest of judgment in his appeal, or alternatively, to uphold the order granting a new trial. Because we agree with defendant that a fatal variance existed between the indictment and the jury instructions, we affirm the order granting a new trial.

The evidence indicated that defendant (an attorney), one of his clients (Todd), and a bail bondsman (Leavitt) formed a coal brokerage business, American International Company, which contracted to supply a local utility with low-sulfur coal. If the average sulfur content for any month's shipment exceeded the specified level, the utility could cancel the remainder of the contract and pay only half the approximately $120,000-per-month contract price for the non-conforming shipment. To measure sulfur content, the utility would accumulate samples of pulverized coal for each 10-day period, store them in a shed, and subsequently test them before making payment. American International's first twenty days of shipment drastically exceeded the specified sulfur level. The defendant met several times with Todd and Leavitt to discuss the problem. One night soon there-

---

1. Defendant was charged in three counts with theft by deception, conspiracy to commit theft, and conspiracy to commit burglary. Because his demurrer to the conspiracy to commit burglary was sustained, and because he was acquitted of conspiracy to commit theft, we are concerned here only with the theft by deception charge.

after Todd and Leavitt went to the utility's shed and replaced the last 10–day sample from their company with a similar quantity of extra-low-sulfur metalurgical grade coal. Although Todd told defendant about the sample switch the following day, defendant did not notify the utility. As a result of the switch, the month's sulfur content was within specified levels, and a few weeks later defendant accepted the utility's full payment of $120,000 on behalf of American International.

At the close of testimony, the lower court instructed the jury on the elements of theft by deception and accomplice liability. Additionally, it instructed the jury, over defendant's objection, that, even if it could not find defendant had acted intentionally, it could convict him of theft by deception if it found he had recklessly omitted to perform a duty imposed by law upon the brokerage business for which he was the primary responsible agent. The jury convicted defendant. Upon defendant's post-trial motions the lower court en banc deemed the additional instructions concerning reckless omission to be error and granted a new trial. These appeals followed.

■■■ Appellant contends that the instruction concerning reckless omission of a corporate duty was at such a variance from the indictment as to be fatal to the verdict. We agree. The indictment charged defendant as follows:

> On or about May 13, 1975, said actor did personally or through an accomplice *intentionally* obtain $61,542.49, being the property of West Penn Power Company, by deception; to wit said actor did create and reinforce a false impression as to the quality and value of coal delivered to the Armstrong Power Station at Reesdale during April, 1975, said deliveries being made pursuant to a contract between West Penn Power Company and American International Company.

(Emphasis added.) The Commonwealth's indictment thus alleged that defendant, personally or through an accomplice, intentionally obtained or withheld the utility's property.

The lower court properly submitted that issue to the jury. However, the court also instructed the jury to determine if defendant had omitted a duty imposed upon the brokerage business, if he were the primary responsible agent for that duty, and further instructed that it could find defendant guilty even if it could not find he had acted intentionally, as follows:

> ... then you must decide if [the defendant] acted *recklessly* when he failed to advise West Penn Power regarding the sample switch prior to its payment to American International. If you believe he did act *recklessly* under those circumstances you may find him guilty of [theft by deception]....

(N.T. at 2050) (Emphasis added.) The additional jury instructions along with certain evidence supporting them thus put before the jury the allegation that defendant had obtained or withheld the utility's property through the reckless omission of a duty imposed by law upon his corporation. This allegation varied from that in the indictment. A variance between the indictment and proof will be deemed fatal to the verdict when a defendant could be: (1) misled at trial; (2) prejudicially surprised in efforts to prepare a defense; (3) precluded from anticipating the prosecution's proof; or (4) otherwise impaired with respect to a substantial right. *Commonwealth v. Kelly*, 487 Pa. 174, 177, 409 A.2d 21, 23 (1979); *Commonwealth v. Pope*, 455 Pa. 384, 390, 317 A.2d 887, 890 (1977). We find the variance between the indictment and the charge submitted to the jury here could have sufficiently misled the defendant, been prejudicial to his efforts to prepare a defense, precluded him from anticipating the prosecution's proof, and impaired his substantial rights so as to be fatal to the verdict.

The Commonwealth contends that there is no variance because the indictment adequately apprised defendant of his potential liability as a corporate agent under section 307(e)(2) of the Crimes Code, 18 Pa.C.S.A. § 307(e)(2), partic-

ularly by naming American International and using the words "or through an accomplice." We disagree. Section 307(e)(2) states that:

> (2) Whenever a duty to act is imposed by law upon a corporation or unincorporated association any agent of the corporation or unincorporated association having primary responsibility for the discharge of the duty is legally accountable for a *reckless omission* to perform the required act to the same extent as if the duty were imposed by law directly upon himself.

18 Pa.C.S.A. § 307(e)(2) (emphasis added). Section 307, concerning the criminal accountability of corporations, associations, and their agents for acts on behalf of one another, "supplements" the general principles of accomplice liability, Model Penal Code § 2.07, Comment (Tent.Draft No. 4, 1975),[2] and is "applicable" to all offenses defined by the Crimes Code. *See* 18 Pa.C.S.A. § 107(a). Indicting for accomplice liability does indirectly alert a defendant that he may be held accountable for another's conduct by the definition of the specific offense, by any form of accomplice liability in the general accomplice section, or by some other accessorial principles in the Crimes Code. 18 Pa.C.S.A. § 306(b)(2) ("A person is legally accountable for the conduct of another person when . . . he is made accountable for the conduct of such other person by this title."). However, by the scheme of the Crimes Code, provisions holding a defendant liable for offenses upon a lesser degree of culpability—recklessness—than ordinarily required for an intentional offense such as theft by deception, *see* 18 Pa.C.S.A. § 3922—violate the general principle that "the liability of an accomplice ought not extend beyond the criminal purposes he shares or knows," Model Penal Code § 2.06, Comment (Tent.Draft No. 1, 1953). Such liability is thus "created by special section[s]

---

**2.** Model Penal Code Comments are not binding, but may be used to resolve problems in interpreting Crimes Code provisions. *See Commonwealth v. Brown*, 473 Pa. 458, 462 n. 4, 375 A.2d 331, 334 n. 4 (1977).

dealing with the special situation[s]." *Id.* Section 307(e)(2), relied upon by the Commonwealth, is such a special provision. It purports to hold an agent liable for even an intentional crime upon a showing of: (1) recklessness; (2) omission of a duty; (3) which duty is imposed by law upon the agent's principal, a corporation or association; and (4) the agent's primary responsibility for the duty. 18 Pa.C.S.A. § 307(e)(2). By placing section 307 in a separate section from the general accomplice provisions, the legislature manifested its intent to create a special form of accessorial liability with attendant substantive and procedural distinctions. *Cf. Commonwealth v. Perkins*, 485 Pa. 286, 401 A.2d 1320 (1979) (equally divided Supreme Court allowed jury to be charged on accomplice liability even though indictment only charged defendant as a principal; opinion in support of affirmance relied on Model Penal Code comments and grouping of general accomplice provisions in one section). Accordingly, because section 307(e)(2) so alters the elements of Commonwealth's proof, we believe the better view is to require the indictment to set forth specifically each of the elements of section 307(e)(2) whenever the Commonwealth elects to proceed under it. *See People v. King*, 5 Ill.App.3d 357, 283 N.E.2d 294 (1972) (dismissing complaint and holding that individual could not be held criminally liable under the Illinois version of section 307(e)(2) for corporation's failure to file a state tax return when complaint charged him individually without setting forth any relation he may have had to the corporation).

Failure to specify in the indictment each of the elements of section 307(e)(2) can seriously mislead the defendant, prejudicially surprise him, preclude him from anticipating the prosecution's proof, and impair his substantial rights. For example, he may be deprived of the opportunity to present a factual defense on the issue of whether he is the "primary responsible agent." 18 Pa.C.S.A. § 307(e)(2). *Cf. Commonwealth v. Petrilla*, 46 Luz.L.Reg. 50, ——, 5 Pa.D. & C.2d 707, 708 (1956) ("Where an offense may be committed

by persons of a certain class or description only, accused must be described with certainty and directness as being of that class or description at time of the act charged."). Further, an agent acting affirmatively on behalf of the corporation or association must be proven to have the same degree of culpability as if the act were performed on his own behalf, 18 Pa.C.S.A. § 307(e)(1), whereas it is only in the case of an "omission" that the agent's recklessness can subject him to liability for an intentional crime. 18 Pa.C.S.A. § 307(e)(2). Thus where the indictment seeks conviction upon a theory of reckless omission, the Commonwealth must confine its proof to the omission. This consideration is especially significant here. The indictment charged defendant with committing an offense "on or about May 13, 1975," the day he affirmatively acted by accepting full payment on behalf of the corporation; it did not specify the "duty to act imposed by law" upon the corporation; nor did it elucidate how the duty had been breached. We cannot say that defendant was not prejudiced in preparing his defense to section 307(e)(2) liability by such an indictment. Finally, the Commonwealth's failure to specify that it sought conviction upon mere proof of recklessness could have impaired a substantial right, for instance, by affecting defendant's decision whether to testify at trial. Defendant testified that he did not believe Todd's report that the samples had been switched. (N.T. at 1487–88). Such testimony, if believed, may have tended to negate "intent," particularly as it has been applied in theft by deception cases. 18 Pa.C.S.A. §§ 302(b)(1), 3922(a)(1). See, e.g., Commonwealth v. Gallo, 473 Pa. 186, 191, 373 A.2d 1109, 1111 (1977); Commonwealth v. Lynch, 270 Pa.Superior Ct. 554, 567, 411 A.2d 1224, 1236 (1979). Such testimony, however, could be damaging on the issue of recklessness—"consciously disregarding a substantial risk," 18 Pa.C.S.A. § 302(b)(3)—and may never have been offered by defendant had he known he was being held subject to liability for a reckless omission. For the foregoing reasons we find the variance between the indictment

and the case as submitted to the jury fatal to the verdict so as to entitle defendant to a new trial.

Defendant contends in his appeal the he should be entitled to an arrest of judgment because of the variance, prosecutorial misconduct, and numerous alleged trial errors. This contention is without merit. "It is . . . well settled . . . that only causes appearing on the face of the record, or insufficiency of the evidence, will justify a granting of a motion in arrest of judgment." *Commonwealth v. Jackson*, 223 Pa.Superior Ct. 497, 501, 302 A.2d 420, 422–23 (1973). Causes appearing on the face of the record include such fundamental defects as lack of jurisdiction, former jeopardy, or failure of the information to charge an offense. *See, e.g., Commonwealth v. L. E. Wilson Co.*, 458 Pa. 470, 472, 328 A.2d 502, 504 (1974); *Commonwealth v. Kacko*, 258 Pa.Superior Ct. 516, 393 A.2d 478 (1978); *Straley License*, 51 Pa.D. & C.2d 493, 494 (C.P. Centre County 1971). For trial errors, prosecutorial misconduct, if any were to be found, and for a fatal variance a new trial is the appropriate relief. *Commonwealth v. Perkins, supra; Commonwealth v. Warfield*, 424 Pa. 555, 227 A.2d 177 (1967). We thus affirm the order granting a new trial.[3]

Order affirmed.

PRICE, J., did not participate in the consideration or decision of this case.

3. Defendant contends also that the lower court erred in allowing Todd to testify against him after receiving an allegedly improper grant of immunity. Because the issue is likely to arise at retrial, we note our agreement with the lower court en banc that defendant lacks standing to challenge the immunity granted to a third person. *Commonwealth v. Russell*, 225 Pa.Superior Ct. 133, 136, 310 A.2d 296, 298 (1976) ("[O]nly the person whose rights have been violated has standing to challenge [the validity of an order granting immunity]"). Defendant may, of course, raise Todd's immunity in cross-examination. *Id.*, 225 Pa.Super. at 137, 310 A.2d at 298. Because we do not believe that defendant's other alleged trial errors or prosecutorial misconduct are likely to recur, we express no view on appellant's remaining contentions.