461 A.2d 1220

COMMONWEALTH of Pennsylvania, Appellee,

v.

Richard C. SCHOMAKER, Appellant.

Supreme Court of Pennsylvania.

Argued March 9, 1983.

Decided April 27, 1983.

H. David Rothman, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy Dist. Atty., Melinda G. Tell, Joel M. Kaufman, Asst. Dist. Attys., Pittsburgh, for appellee.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION

ZAPPALA, Justice.

This appeal is before the Court upon a grant of appellant's allocatur petition.[1]  Appellant challenges the Court of Com-

1. The cross-petition filed by the Commonwealth was denied.

mon Pleas' grant and the Superior Court's, 239 Pa.Super. 78, 437 A.2d 999, affirmance of a new trial following their finding that a fatal variance existed between the indictment and the jury instructions at appellant's trial. The appellant was charged with criminal conspiracy and theft by deception. He now argues that his motion for arrest of judgment should have been granted. We agree.

Facts germane to the resolution of this case are summarized as follows:

Appellant, an attorney, entered into a business venture with Robert Todd, a client of the appellant, and one Stephen Levitt. They formed a coal brokerage firm called American International Company, which contracted to supply West Penn Power Company (hereinafter Utility Company) with low-sulfur coal. The contract provided that if the average sulfur content for any month's shipment exceeded a specified level, the Utility Company could cancel the remainder of the contract and pay only half the approximately $120,-000-per-month contract price for the nonconforming shipment. To measure sulfur content, the Utility Company would accumulate samples of pulverized coal for each 10-day period, store them in a shed, and subsequently test them before making payment. American International's first twenty days of shipment drastically exceeded the specified sulfur level. The appellant met several times with Todd and Levitt to discuss the problem. Soon thereafter, Todd and Levitt went to the Utility Company's shed and replaced the last 10-day sample from their company with a similar quantity of extra-low sulfur, metalurgical grade coal. Although Todd told the appellant about the sample switch the following day, the testimony conflicts as to whether appellant actually believed Todd. In any event, the appellant did not notify the Utility Company. As a result of the switch, the month's sulfur content was within specified levels, and a few weeks later appellant accepted the Utility Company's full payment of $120,000 on behalf of American International.

Appellant was charged with criminal conspiracy and theft by deception as defined by 18 Pa.C.S.A. §§ 903(a)(1) and 3922(a)(1) respectively. He was named in the information individually, not as an officer of American International Company.

At the close of the trial, the judge instructed the jury over defense objection, that appellant could be found guilty of a theft by deception if his actions constituted a reckless omission of a duty imposed by law pursuant to 18 Pa.C.S.A. § 307.[2] The jury acquitted appellant of the criminal conspiracy charge but found him guilty of the theft by deception.

■ Following the filing of appropriate motions, the court en banc and Superior Court found that a fatal variance occurred between the information and the jury instructions at trial. *Commonwealth v. Schomaker*, 293 Pa.Super. 78, 437 A.2d 999 (1981). We likewise agree. However, we do not agree with the lower court or the Superior Court's refusal to grant an arrest of judgment.

Our review of the record indicates that a retrial of the appellant would violate his constitutional right against twice being placed in jeopardy under our holding in *Comm. v.*

---

**2.** The relevant portions of § 307 are as follows:

**§ 307. Liability of organizations and certain related persons**

**(a) Corporations generally.**—A corporation may be convicted of the commission of an offense if:

. . . . .

(3) the commission of the offense was authorized, requested, commanded, performed or recklessly tolerated by the board of directors or by a high managerial agent acting in behalf of the corporation within the scope of his office or employment.

. . . . .

**(e) Persons acting or under a duty to act for organizations.**—

. . . . .

(2) Whenever a duty to act is imposed by law upon a corporation or an unincorporated association, any agent of the corporation or association having primary responsibility for the discharge of the duty is legally accountable for a reckless omission to perform the required act to the same extent as if the duty were imposed by law directly upon himself.

*Hude & Klinger,* 492 Pa. 600, 425 A.2d 313 (1980), and a reading of 18 Pa.C.S.A. § 110(2).

18 Pa.C.S.A. § 110 reads as follows:

"Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:

\* \* \* \* \* \*

(2) The former prosecution was terminated, after the indictment was found, by an acquittal or by a final order or judgment for the defendant which has not been set aside, reversed or vacated and *which acquittal, final order or judgment necessarily required a determination inconsistent with a fact which must be established for conviction of the second offense."* (Emphasis added).

In *Hude,* Mr. Justice Nix thoroughly analyzed the functioning of § 110(2) in light of the mandate and policies of *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). The Supreme Court in *Ashe* held collateral estoppel to be part of the Fifth Amendment's guarantee against double jeopardy.

We held in *Hude* that § 110(2) must necessarily be coextensive with the *Ashe* standard, and thus interpreted the "necessarily required a determination" language of § 110(2) to be no more restrictive than the *Ashe* language of "whether a rational jury could have grounded its verdict." *Id.* 492 Pa. at 614, 425 A.2d 313.

■ From this it was concluded that an application of § 110(2) need not be restricted only to instances where the "ultimate" issue of fact decided in the first trial is a necessary fact which must be established for a conviction in the second trial. Rather, in instances where a logical reading of the record and surrounding circumstances would support such a conclusion, § 110(2) will also encompass a preclusion of an "evidentiary" issue which is found to have been necessarily adjudicated in the first trial, and which now

must be established to gain a conviction in the second trial, *Id.,* 492 Pa. at 619, 425 A.2d 313.

The instant case is particularly susceptible to this analysis.

The charges of criminal conspiracy and theft by deception both require proof of *intent* as an essential element.[3]

The only contested element in the first trial was appellant's intent. The Commonwealth attempted to supply this element through the testimony of Robert Todd. The appellant denied any intent on his part but did admit that he had been negligent in not examining the validity of Todd's assertions.

During closing arguments, the Commonwealth's attorney abandoned Todd's testimony, emphatically requesting the jury to disregard his testimony, implying that he was a liar, and then asked for a conviction based on appellant's own admission of negligence. (T. 2005–2007).

The judge, over defense objections, instructed the jury that appellant could be convicted of the theft by reason of a reckless omission under the corporate officer liability statute 18 Pa.C.S.A. § 307(e)(2). (T. 2065–2066).

■ By its very nature, there can be no substitute for intent in a conspiracy.

3. **§ 903. Criminal Conspiracy**
 (a) **Definition of conspiracy.**—A person is guilty of conspiracy with another person or persons to commit a crime if with the *intent* of promoting or facilitating its commission he:
 (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or or an attempt or solicitation to commit such crime; ...
 **§ 3922. Theft by deception**
 (a) **Offense defined.**—A person is guilty of theft if he *intentionally* obtains or withholds property of another by deception. A person deceives if he intentionally:
 (1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise; ... (Emphasis added).

All theories that are recognized under our law to hold one responsible for the criminal acts of another *require the existence of a shared criminal intent.* It is well settled that the nexus which renders all members of a criminal conspiracy responsible for the acts of any of its members is the unlawful agreement. *Commonwealth v. Wilson,* 449 Pa. 235, 238, 296 A.2d 719, 721 (1972). (Emphasis added)

*Commonwealth v. Horner,* 497 Pa. 565, 442 A.2d 682, 684 (1982). Thus, for a conviction on criminal conspiracy charges, intent must be proven. Intent is the sine qua non of a conspiracy. A lesser standard cannot be interposed in its stead.

█ We must therefore conclude that the issue of intent was necessarily decided by the jury when it acquitted appellant of the conspiracy charge.

An analytical reading of the record with a view of the surrounding circumstances, especially the Commonwealth's own stance taken during closing arguments in the trial, leads us to the conclusion that the jury, as instructed by the attorney for the Commonwealth, rejected the testimony of Robert Todd and acquitted appellant of the charge of criminal conspiracy because he lacked the requisite intent. Thus, by virtue of appellant's acquittal on the criminal conspiracy charge, the issue of intent has necessarily been litigated in the appellant's favor and, following the rationale in *Hude,* § 110(2) would preclude a relitigation of the issue. Since the Commonwealth cannot now amend its information and must proceed on the charge as filed, thereby requiring it to prove intent, an element it has abandoned, no purpose would be served by ordering a new trial. Therefore, the appellant must be discharged.

The Order of the Superior Court is reversed, the judgment arrested, and the appellant is discharged.

McDERMOTT, J., dissents.