469 A.2d 1371

**COMMONWEALTH of Pennsylvania**

v.

**Louis BROWN, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 28, 1983.

Decided Dec. 29, 1983.

John W. Packel, Chief, Appeals Div., Leonard N. Sosnov, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Ronald Eisenberg, Asst. Dist. Attys., Philadelphia, for appellee.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHER-TY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION

NIX, Justice.

This appeal raises the question as to whether a probation revocation court could return a finding of probation revocation based upon the probationer's alleged participation in a crime where the probation revocation hearing was deferred until after the trial of the criminal case which resulted in an acquittal. Both the trial court and the Superior Court answered this question in the affirmative. We granted review and we now reverse.

In April, 1976, appellant was placed on probation for a term of four years for a conspiracy conviction. At the same time appellant was sentenced to prison for a companion conviction for robbery. After completing the prison sentence imposed under the robbery charge, but during the probationary period, he was arrested and tried for another

robbery and criminal conspiracy charge. That trial upon the subsequent offenses resulted in an acquittal.

Shortly after appellant's arrest on the new charges the Commonwealth requested that the revocation of probation hearing be delayed until after the outcome of appellant's criminal trial for those offenses. In October, 1978, after appellant's acquittal, a revocation of probation hearing was held and appellant's probation was revoked. He was sentenced to a term of imprisonment of two to five years. An appeal was taken to the Superior Court, a panel of which affirmed his judgment of sentence. *Commonwealth v. Brown*, 281 Pa.Super. 348, 422 A.2d 203 (1980). This appeal follows.

I.

In *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the United States Supreme Court held the federal rule of collateral estoppel was embodied in the Fifth Amendment's guarantee against double jeopardy. *Accord, Turner v. Arkansas*, 407 U.S. 366, 92 S.Ct. 2096, 32 L.Ed.2d 798 (1972); *Harris v. Washington*, 404 U.S. 55, 92 S.Ct. 183, 30 L.Ed.2d 212 (1971); *Simpson v. Florida*, 403 U.S. 384, 91 S.Ct. 1801, 29 L.Ed.2d 549 (1971); *Commonwealth v. Hude*, 492 Pa. 600, 425 A.2d 313 (1980); *Commonwealth v. Peluso*, 481 Pa. 641, 393 A.2d 344 (1978); *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977) (plurality opinion). Prior to *Ashe* the Supreme Court in reviewing state court practices had considered the question of consecutive proceedings under the rubric of due process. *Hoag v. New Jersey*, 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913 (1958), reh. den. 357 U.S. 933, 78 S.Ct. 1366, 2 L.Ed.2d 1375.[1]

1. The *Hoag* Court although recognizing collateral estoppel as a widely accepted rule of law in criminal cases, declined to consider in that case whether it was a constitutional requirement, concluding that the principle was not applicable to the facts in the case then before it. *Hoag v. New Jersey*, 356 U.S. 464, 470–472, 78 S.Ct. 829, 833–835, 2 L.Ed.2d 913 (1958).

In concluding that collateral estoppel was a constitutional requirement under the double jeopardy clause, the *Ashe* Court explained the significance of that holding in contrast to a finding that the rule was merely a due process concern.

The doctrine of *Benton v. Maryland,* 395 U.S. 784, 23 L.Ed.2d 707, 89 S.Ct. 2056, puts the issues in the present case in a perspective quite different from that in which the issues were perceived in *Hoag v. New Jersey,* supra. The question is no longer whether collateral estoppel is a requirement of due process, but whether it is a part of the Fifth Amendment's guarantee against double jeopardy. And if collateral estoppel is embodied in that guarantee, then its applicability in a particular case is no longer a matter to be left for state court determination within the broad bounds of "fundamental fairness," but a matter of constitutional fact we must decide through an examination of the entire record. (Citations omitted.)

*Id.* 397 U.S. at 442–443, 90 S.Ct. at 1193–1194.

 It is no longer open to dispute that the federal constitutional protection against double jeopardy forbids the states from offending the collateral estoppel rule. *Turner v. Arkansas, supra; Harris v. Washington, supra; Simpson v. Florida, supra; Ashe v. Swenson, supra; Commonwealth v. Schomaker,* 501 Pa. 404, 461 A.2d 1220 (1983); *Commonwealth v. Grazier,* 481 Pa. 622, 393 A.2d 335 (1978); *Commonwealth v. Hude, supra.* This principle has been recognized by the Commonwealth, the trial court and the Superior Court in this case. What is being questioned is the applicability of the collateral estoppel rule to the instant facts.

The *Ashe* Court explained the rule as follows:

It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.

*Id.* 397 U.S. at 443, 90 S.Ct. at 1194.

In explaining the applicability of the collateral estoppel rule the Court stressed that in criminal cases it "is not to be

applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality". *Id.* at 444, 90 S.Ct. at 1194.

> Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." The inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." *Sealfon v. United States,* 332 US 575, 579, 92 L Ed 180, 184, 68 S Ct 237. Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal. (Footnotes omitted.)

*Id.* 397 U.S. at 444, 90 S.Ct. at 1194.

In this matter at the trial of the criminal charge the appellant defended on the ground of alibi. The defense at trial produced evidence to establish that he was elsewhere at the time of the alleged robbery. There was no dispute that a robbery of the victim had occurred. Thus the only rational explanation to be drawn from the general verdict of acquittal was that the jury concluded that appellant did not participate in the criminal act of robbing the victim.

It is equally beyond dispute on this record that the sole basis offered by the Commonwealth to support its request for the revocation of the probation was the accusation that appellant did in fact participate in the robbery for which he had previously been tried and acquitted. Thus the Commonwealth, by election, chose to relitigate at the revocation hearing the exact same issue that had been decided against it in the criminal trial. This, therefore, is a clear case of an attempt to raise an issue of ultimate fact that has previously been litigated and ruled adversely to the Commonwealth.

■ Here it is argued that the collateral estoppel rule of *Ashe* should not be found applicable, although this is clearly an effort to relitigate the same issue of ultimate fact, because of the difference in the burden of proof required in the two proceedings.[2] It is urged that *Ashe* should be limited to its facts, i.e., where the first and second proceedings were both criminal trials requiring the same burden of proof. While this is a distinction between the two situations, we are not as confident as the Commonwealth that it justifies concluding that the United States Supreme Court would find *Ashe* inapplicable.

The Commonwealth's contention relies heavily upon the Supreme Court's per curiam decision in *One Lot Emerald Cut Stones and One Ring v. United States (One Lot Stones)* 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972). In that decision the Supreme Court ruled after an acquittal, collateral estoppel does not bar a subsequent civil action using a preponderance standard of proof. The distinction between the relevant factors in *One Lot Stones* and this case is of such nature that we are reluctant to view that per curiam opinion as a precursor of the result the United States Supreme Court would reach under the instant facts.

In *One Lot Stones* the criminal charge was for wilfully and knowingly, with an intent to defraud the United States, smuggling articles into the United States without submitting to the required customs procedures. 18 U.S.C. § 545. To establish a violation of this section the government was required to prove the physical act of unlawful importation as well as a knowing and wilful intent to defraud the United States. The court that tried the criminal charge specifically found that the government had failed to establish that intent.

In contrast, to succeed in the subsequent action under 19 U.S.C. § 1497 the government was required only to prove

2. In a revocation hearing the Commonwealth has the obligation of establishing its case by a preponderance of the evidence. *Commonwealth v. Griggs*, —— Pa.Super. ——, 461 A.2d 221 (1983); *Commonwealth v. Fleeger*, 292 Pa.Super. 310, 437 A.2d 60 (1981).

that the property was brought into the United States without the required declaration. Thus in *One Lot Stones* the Court found "the criminal acquittal may not be regarded as a determination that the property was not unlawfully brought into the United States, and the forfeiture proceeding will not involve an issue previously litigated and finally determined between these parties." *Id.* at 235, 93 S.Ct. at 492. Therefore, the Court concluded that the principle in *Ashe* was inapplicable since the jury's verdict at the first criminal trial did not necessarily decide the issue raised in the subsequent proceeding.

It is true that the Supreme Court in *One Lot Stones* noted the difference in the burden of proof in the two proceedings, nevertheless, its primary focus in this regard was upon the fact that the forfeiture proceeding under section 1497 was a civil action.

> If for no other reason, the forfeiture is not barred by the Double Jeopardy Clause of the Fifth Amendment because *it involves neither two criminal trials nor two criminal punishments.* Congress may impose both a criminal and a civil sanction in respect to the same act or omission; *for the double jeopardy clause prohibits merely punishing twice, or attempting a second time to punish criminally, for the same offense.* (Citations omitted.) (Emphasis added.)
> *Id.* at 235–36, 93 S.Ct. at 492–93.

It is therefore questionable whether the Supreme Court would reach the same conclusion where the subsequent proceeding is not a civil case, but rather a parole revocation matter involving a loss of liberty. *See Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *United States v. Workman,* 585 F.2d 1205 (4th Cir.1978).

It is also significant that the per curiam opinion in *One Lot Stones* made no reference to that Court's decision in *Coffey v. United States,* 116 U.S. 436, 6 S.Ct. 437, 29 L.Ed. 684 (1886) (acquittal on criminal charges barred a subsequent *in rem* action for the punitive forfeiture of the

property involved in the criminal prosecution). Therein the Court stated:

> It is also true that the proceedings to enforce the forfeiture against the *res* named must be a proceeding *in rem* and a civil action, while that to enforce the fine and imprisonment must be a criminal proceeding, as was held by this court in *The Palmyra,* [25 U.S. 1] 12 Wheat. 1, 14 [6 L.Ed. 531]. Yet where an issue raised, as to the existence of the act or fact denounced, has been tried in a criminal proceeding instituted by the United States, and a judgment of acquittal has been rendered in favor of a particular person, that judgment is conclusive in favor of such person on the subsequent trial of a suit *in rem* by the United States, where, as against him, the existence of the same act or fact is the matter in issue as a cause for the forfeiture of the property prosecuted in such suit *in rem.* It is urged as a reason for not allowing such effect to the judgment that the acquittal in the criminal case may have taken place because of the rule requiring guilt to be proved beyond a reasonable doubt, and that, on the same evidence, on the question of preponderance of proof, there might be a verdict for the United States in the suit *in rem.* Nevertheless, the fact or act has been put in issue and determined against the United States; and all that is imposed by the statute as a consequence of guilt, is a punishment therefor. There could be no new trial of the criminal prosecution after the acquittal in it; and a subsequent trial of the civil suit amounts to substantially the same thing, with a difference only in the consequences following a judgment adverse to the claimant. *Coffey v. United States, supra,* 116 U.S. at 443, 6 S.Ct. at 440.[3]

3. *Coffey v. United States,* 116 U.S. 436, 6 S.Ct. 437, 29 L.Ed. 684 (1886) was decided before the recognition in *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) that collateral estoppel was mandated by the double jeopardy clause of the Fifth Amendment. Coffey reached its result by applying collateral estoppel as a federal rule of practice.

Thus an analysis of the relevant Supreme Court decisions does not force the conclusion, as suggested by the Commonwealth, that collateral estoppel will not be deemed applicable where the second trial involves a burden of proof less than the reasonable doubt standard. We therefore reject the suggestion that the difference in burden of proof is conclusive upon the question. Viewing the Commonwealth's argument in its most favorable light, it can only be said that the question has not been definitively put to rest by the decisions of the Supreme Court.

### III.

#### A.

We need not attempt to anticipate the Supreme Court's ultimate determination of the federal constitutional issue to resolve the question before us. This matter can properly be decided upon the basis of state law and we are satisfied that such an approach is justified here. The concept of collateral estoppel is not new to this jurisdiction, *Commonwealth v. Hude, supra; Commonwealth v. Peluso, supra; Safeguard Mutual Insurance Co. v. Williams,* 463 Pa. 567, 345 A.2d 664 (1975); *Commonwealth v. Campana,* 452 Pa. 233, 304 A.2d 432, *vacated and remanded,* 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973); *on remand,* 455 Pa. 622, 314 A.2d 854, *cert. denied,* 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974); *Larsen v. Larsen,* 392 Pa. 609, 141 A.2d 353 (1958); *Thal v. Krawitz,* 365 Pa. 110, 73 A.2d 376 (1950); and its applicability under the instant facts is clear.

 In this jurisdiction it is well settled that a probation violation hearing may be conducted prior to a trial for the criminal charges based on the same activities. *Commonwealth v. Kates,* 452 Pa. 102, 305 A.2d 701 (1973); see also *Commonwealth v. Burrell,* 497 Pa. 367, 441 A.2d 744 (1982); *Commonwealth v. Davis,* 234 Pa.Super. 31, 336 A.2d 616 (1975). Nor is the revocation of probation and the imposition of a prison sentence restricted to a finding that a subsequent criminal act has been committed by the proba-

tioner during the term of the probation. *Hines v. Pennsylvania Board of Probation and Parole,* 491 Pa. 142, 420 A.2d 381 (1980); *Commonwealth v. Rudy,* 304 Pa.Super. 64, 450 A.2d 102 (1982); *Commonwealth v. Edward,* 303 Pa.Super. 454, 450 A.2d 15 (1982); *Commonwealth v. Mallon,* 267 Pa.Super. 163, 406 A.2d 569 (1979); *Commonwealth v. Newman,* 225 Pa.Super. 327, 310 A.2d 380 (1973). A probation violation is established whenever it is shown that the conduct of the probationer indicates the probation has proven to have been an ineffective vehicle to accomplish rehabilitation and not sufficient to deter against future antisocial conduct. *Commonwealth v. Burrell, supra; Commonwealth v. Kates, supra.* In addition, Pa.R.Crim.P. 1409 requires that a revocation hearing be held "as speedily as possible". See also, 37 Pa.Code § 71.4; *Hines v. Pennsylvania Board of Probation and Parole, supra; Commonwealth v. Williams,* 254 Pa.Super. 202, 385 A.2d 979 (1978); *Commonwealth v. Call,* 249 Pa.Super. 511, 378 A.2d 412 (1977); *Commonwealth v. Sinclair,* 245 Pa.Super. 287, 369 A.2d 407 (1976).

In this case the Commonwealth elected to defer the revocation decision until after the outcome of the trial on the new charges. The Commonwealth also chose to cite appellant's participation in the robbery as the only basis for the requested revocation of the probation.[4] The record also establishes that the only reason a "speedy" revocation hearing was not held in accordance with our rules was to accommodate the Commonwealth's request that the determination as to appellant's participation in the charged robbery be deferred to the fact finding process of the criminal justice system.

In explaining the reason for permitting the deferral of the revocation hearing provided for under our rules, we recently had occasion to observe:

Although it is constitutionally permissible for a probation revocation hearing to be held after arrest but before

---

4. Up to this point there has not been any other ground offered by the Commonwealth to justify the revocation of appellant's probation.

determination of a criminal charge, *Commonwealth v. Kates*, 452 Pa. 102, 305 A.2d 701 (1973), it has been recognized that "it may in many cases be preferable to defer that hearing until after the trial, thus avoiding the possibly unjust result of revoking probation, only to find later that the probationer has been acquitted of the charges that prompted the revocation hearing." *Commonwealth v. Davis*, 234 Pa.Super. 31, 44, 336 A.2d 616, 623 (1975). Accord, ABA Project on Standards for Criminal Justice, Standards Relating to Probation, § 5.3 (Approved Draft, 1970). (Footnote omitted.)

*Commonwealth v. Burrell*, 497 Pa. 367, 371, 441 A.2d 744, 746 (1982).

It is obvious that the second bite of the apple which the Commonwealth seeks here is quite incompatible with our statement of purpose in sanctioning such a procedure. Moreover, the above cited language reflects the clear assumption that where there has been such a deferral the Commonwealth will be bound by the finding of the criminal trial.[5]

## B.

▮ The Commonwealth also argues that since the purposes sought to be achieved in a revocation of probation hearing are different from those sought to be obtained in the trial of the substantive offense, we would be justified in ignoring applicability of the collateral estoppel rule even though both proceedings share the identical ultimate issue of fact. Closer scrutiny of this argument reveals its weakness. In both proceedings the sanction of loss of liberty is involved. Where, as here, the sole basis offered for the violation of probation is the commission of a subsequent offense, the threshold issue in both proceedings is exactly

---

**5.** In *Burrell* we also noted that the probation revocation hearing court is required as a matter of law to find a violation where there has been a conviction under the criminal justice system. *Commonwealth v. Burrell*, 497 Pa. 367, 371, 441 A.2d 744, 746–47 (1982). The Commonwealth's argument would have us deny the converse where the verdict is unfavorable to them.

the same, i.e., did the probationer commit the offense. Pertinent is an observation made in *United States ex rel Burgess v. Lindsey*, 395 F.Supp. 404, 410 (E.D.Pa.1975) discussing an analogous matter:

> When the Board is called upon to deal with a parolee whose only alleged parole violation is the commission of a new crime, however, its role changes significantly. No longer is it the finder of fact. Indeed, at the first stage of the final revocational process, it is not a finder of fact at all. The crucial and "wholly retrospective factual question" that must be answered, *Morrissey v. Brewer*, *supra*, 408 U.S. [471] at 479, 92 S.Ct. 2593 [at 2599, 33 L.Ed.2d 484 (1972)] is whether a parole violation has occurred, in other words, whether the parolee has in fact committed a new crime. The Board does not answer that question; the criminal justice system does. . . .
>
> \* \* \* \* \* \*

Thus, the final parole revocation inquiry envisioned by the Court in Morrissey cannot properly begin until the Board learns whether or not the parolee has violated his parole. The Board does not learn that fact until the guilt or innocence of the parolee has been determined within the criminal justice system.

Most important is that it must be remembered parole and probation as well as the criminal trial fall under the penumbra of the criminal justice system. All of the components of that system are designed to achieve the basic objectives of the system. Each segment of the system intermeshes with the whole to achieve the overall objectives of the system, and the efficiency of the system is dependent upon the harmony existing between the parts. Thus to suggest that the policies of one segment seek a purpose inimical to the policies of the others misconstrues the relationship of the various components among themselves.

### IV.

In the comment to section 5.3 of the ABA Standards on Probation, it is noted:

The second issue which needs to be addressed is the effect of an acquittal on the powers of the court to revoke probation. While the standard does not address the point, it is drafted on the assumption that it would be unseemly for the probation court to conclude, counter to the result of a criminal trial, that an offense has occurred and that it could provide the basis for a revocation. ABA Project on Standards for Criminal Justice, Standards Relating to Probation, § 5.3, at 64 (Approval Draft, 1970).

In view of our practice in Pennsylvania, it would be particularly unseemly to permit the Commonwealth to relitigate the issue of a defendant's participation in a criminal episode where the Commonwealth initially elected to defer that judgment to await the decision of the trial of the cause. The responses provided under our system to protect the public where a probationer evidences by his conduct that probation is not achieving the desired result is more than adequate. As previously stated, we permit the revocation of probation without the requirement that actual criminal behavior be established. In addition, even where the Commonwealth chooses to assert actual criminal behavior as the basis of the revocation, it may do so in a revocation proceeding prior to the criminal trial and thereby avoid the reasonable doubt burden of proof.[6]

Thus the problem presented in this law suit is merely whether the Commonwealth, after having elected to defer to the judgment of the jury, should be given the additional opportunity to relitigate the same issue applying a preponderance of the evidence test. We do not believe that there is any justification for such a disparity. As has

6. It is significant that the legislature in conferring power in the Board of Pardons and Parole has restricted their right to prove the commission of a subsequent offense to a finding by the criminal court of the defendant's guilt of that offense. See Act of August 6, 1941, P.L. 861, § 21, added August 24, 1951, P.L. 1401, § 5, as amended, 61 P.S. § 331.21a(a) (1964); United States ex rel. Burgess v. Lindsey, 395 F.Supp. 404 (E.D.Pa.1975); United States ex rel. Heacock v. Myers, 251 F.Supp. 773 (D.C.Pa.1966), aff'd., 367 F.2d 583 (3d Cir.1966) cert. denied 386 U.S. 925, 87 S.Ct. 900, 17 L.Ed.2d 797 (1967).

528

been noted the probationer is bound in a subsequent revocation hearing by an earlier verdict of guilt. See *Commonwealth v. Brown*, 473 Pa. 458, 463, 375 A.2d 331 (1977). Moreover, in electing to defer the judgment in the first instance the Commonwealth has impinged upon the probationer's right to a "speedy" revocation hearing and disposition. Under all of these circumstances, it is clear that such an option would not only be unseemly but fundamentally unfair.

Accordingly, the Order of the Superior Court affirming the judgment of sentence is reversed and the sentence is vacated.

McDERMOTT, J., files a dissenting opinion in which HUTCHINSON, J., joins.

McDERMOTT, Justice, dissenting.

I dissent and would affirm based upon the opinion of the Superior Court. *See Commonwealth v. Brown*, 281 Pa.Super. 348, 422 A.2d 203 (1980).

HUTCHINSON, J., joins in this dissenting opinion.