502 A.2d 631

**COMMONWEALTH of Pennsylvania**

v.

**Thomas TODD, Appellant.**

Superior Court of Pennsylvania.

Submitted May 13, 1985.

Filed Dec. 20, 1985.

454

Richard S. Levine, Assistant Public Defender, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

Before SPAETH, President Judge, and ROWLEY and WIEAND, JJ.

SPAETH, President Judge:

This is an appeal from judgments of sentence for indecent exposure and corruption of a minor. This is appellant's second trial. At his first trial the jury acquitted him of indecent assault but could not reach a verdict on the charges of indecent exposure and corruption of a minor. Appellant's principal argument is that the doctrine of collateral estoppel precluded the admission at his second trial of evidence of his touching of the victim because that evidence had been introduced at his first trial and was not accepted by the jury. We agree, and therefore vacate and remand for a new trial on the charges of indecent exposure and corruption of a minor, with the instruction that at the new trial the Commonwealth may not try to prove corruption by evidence of indecent assault.

The facts are as follows: On August 28, 1981, the victim, a seven year old girl, had gone to appellant's home, looking for his children. Although the children were not at home, she decided to stay and help appellant and his wife pick beans from their garden. During the course of her stay, according to the victim's later testimony, appellant pulled down his zipper and exposed his genitals on two separate occasions. She also testified that while appellant was inspecting marks on her thigh, apparently consisting of drawings made by a felt tip marker, he slid his hands up into her

underpants and touched her vagina. This, she testified, also occurred twice on that day.

The Commonwealth charged appellant with one count each of indecent assault, indecent exposure, and corruption of a minor. The corruption count was explicitly based on the incidents of indecent assault and indecent exposure. Trial was held on March 5 and 8, 1982. After the victim testified as we have just indicated, appellant testified and denied everything the victim had said regarding the sexual contact and exposure. Appellant's wife also testified, stating that she was present with her husband and the victim at all times on the day in question, and that it would have been impossible for her husband to have committed the acts described by the victim without her having seen them. The jury returned a verdict of not guilty on the indecent assault charge but was unable to reach a decision on the remaining charges of indecent exposure and corruption of minors. The trial judge declared a mistrial on those charges and on May 27, 1982, a second trial was held. In the course of that trial, and over defense counsel's objections, the Commonwealth reintroduced all of the testimony regarding appellant's alleged physical contact with the victim. In addition, the trial court denied defense counsel's request that the jury be told that appellant had been acquitted of indecent assault. The jury found appellant guilty of both indecent exposure and corruption of a minor.

On the indecent exposure conviction, the trial court sentenced appellant to two years probation, conditional upon appellant's complying with whatever psychological treatment the county probation office recommended. On the corruption of a minor conviction, the trial court suspended sentence, noting that the suspension was "by virtue of the sentence at Count One [indecent assault], the defendant having been found not guilty of that crime by a jury on March 8, 1982." N.T. 7/30/82, at 8.

As we have noted, appellant's principal argument on appeal is that the doctrine of collateral estoppel precluded the admission of the victim's testimony regarding appel-

lant's touching her. Although this issue was raised in post-trial motions, it is not addressed in the trial court's opinion.

 The doctrine of collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the parties in any future lawsuit." *Commonwealth v. Grazier*, 481 Pa. 622, 632, 393 A.2d 335, 340 (1978), *quoting Ashe v. Swenson*, 397 U.S. 436, 443–44, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). In *Ashe* the United States Supreme Court held that the collateral estoppel effect of an acquittal in a criminal case is "embodied in the Fifth Amendment guarantee against double jeopardy," which is applicable to the states through the 14th Amendment under *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). 397 U.S. at 445, 90 S.Ct. at 1195. The defendant in *Ashe* had been acquitted of the robbery of one of six members of a poker game. The acquittal rested on the inability of the state's witnesses to identify the defendant as one of the robbers. The state then brought a new prosecution against the defendant for the robbery of a second player at the game, and called the same witnesses as those at the first trial. This time the witnesses did identify the defendant and he was convicted. The Supreme Court held that the defendant's acquittal at the first trial precluded the second trial. "The situation [presented by the second trial was] no different", the Court said, from the situation that would have been presented had the victim been the same as at the first trial. 397 U.S. at 446, 90 S.Ct. at 1195–6. "For the name of the victim ... had no bearing whatever upon the issue of whether the [defendant] was one of the robbers." *Id.* The jury having determined at the first trial that "there there was at least a reasonable doubt that the [defendant] was one of the robbers, the State could not present the same or different identification evidence in a second prosecution for the robbery ... in the hope that a different jury might find that evidence more convincing." *Id.* Thus, even where the

offense charged is not literally the same as the one previously tried, both collateral estoppel and the double jeopardy clause may bar relitigation of issue actually determined at the first trial. *Commonwealth v. Grazier, supra; Commonwealth v. Winter*, 324 Pa.Super. 258, 262, 471 A.2d 827, 829 (1984). Our Supreme Court has on several occasions applied *Ashe* to bar a subsequent prosecution. *See, e.g., Commonwealth v. Schomaker*, 501 Pa. 404, 461 A.2d 1220 (1983) (prohibition against double jeopardy requires that defendant's acquittal for conspiracy bar his retrial for theft by deception; such retrial would require relitigation of the same issues); *Commonwealth v. Tarver*, 493 Pa. 320, 426 A.2d 569 (1981) (prosecution for robbery brought six months after defendant had been tried and convicted of felony murder based on the same incident violates double jeopardy aspect of collateral estoppel); *Commonwealth v. Hude*, 492 Pa. 600, 425 A.2d 313 (1980) (doctrine of collateral estoppel as embodied in double jeopardy clause bars defendant's trial for perjury based on his testimony at prior trial where he was acquitted on all counts of narcotics violations; his credibility was necessarily decided at first trial).

Appellant's citation of *Ashe* is to some extent misleading. As we have just indicated, the problem in *Ashe* was when application of the doctrine of collateral estoppel bars a second trial as double jeopardy. Appellant, however, while citing *Ashe*, does not argue that his second trial put him in double jeopardy. Instead, his argument is that at his second trial the issue of whether he had touched the victim should not have been relitigated. Brief for Appellant at 7, 10–12. This argument does not involve application of the doctrine of collateral estoppel in a constitutional sense, *i.e.*, as implicating double jeopardy, but only in its common law sense, *i.e.*, as precluding relitigation of an issue decided in a prior action. It is true, of course, that *Ashe's* definition of the doctrine of collateral estoppel is pertinent to our decision, as is *Ashe's* statement of the spirit in which the doctrine is to be applied. In this last regard, we may also

note that our Supreme Court, citing *Ashe,* has said that in deciding whether the doctrine precludes relitigation of an issue, we must "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Commonwealth v. Hude, supra,* 492 Pa. at 612, 425 A.2d at 319–20, *quoting Ashe, supra* 397 U.S. at 444, 90 S.Ct. at 1194. *See also Commonwealth v. Brown,* 503 Pa. 514, 469 A.2d 1371 (1983).

With these prescriptions in mind, we may look first at the charge of indecent assault, of which appellant was acquitted at his first trial. Section 3126 of the Crimes Code, 18 Pa.C.S. § 3126, defines indecent assault as follows:

A person who has indecent contact with another not his spouse, or causes such other to have indecent contact with him is guilty of indecent assault, a misdemeanor of the second degree, if:

(1) He does so without the consent of the other person;

(2) He knows that the other person suffers from a mental disease or defect which renders him or her incapable of appraising the nature of his or her conduct;

(3) He knows that the other person is unaware that an indecent contact is being committed;

(4) He has substantially impaired the other person's power to appraise or control his or her conduct, by administering or employing without the knowledge of the other drugs, intoxicants or other means for the purpose of preventing resistance; or

(5) The other person is in custody of law or detained in a hospital or other institution and the actor has supervisory or disciplinary authority over him.

The phrase "indecent contact" is defined in section 3101 of the Crimes Code as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in either person." 18 Pa.C.S.

§ 3101. As we have noted, in this case the victim testified that at two different times on the same day appellant, while inspecting some "Magic Marker" marks on her thigh, moved his hand up into her underpants and touched her vagina. This is the only physical contact referred to in her testimony. Appellant testified that he never touched the victim, but that he did ask her about the marks because they looked like a dog bite, and because he had seen similar marks on his own child. N.T. 3/8/82 at 43–47.

The Commonwealth argues that in acquitting appellant of indecent assault, the first jury did not necessarily decide that there had been no physical touching or indecent contact. Pointing to the elements of section 3126 of the Crimes Code, the Commonwealth suggests that appellant's acquittal may have rested either on a finding that the victim consented (§ 3126(1)), or on a finding that she was unaware that an indecent contact was occurring (§ 3126(3)). We find these arguments without merit.

 Absence of consent is an essential element of indecent assault. *Commonwealth v. Blauvelt,* 186 Pa.Super. 66, 72, 140 A.2d 463, 466 (1958). Here, the victim was a seven year old child. Taken as true, her testimony was that appellant initiated the contact by inspecting marks on her thigh. This was a contact to which the child reasonably could have consented. No rational jury, however, could find that she consented to the subsequent movement of appellant's hand up into her underpants. As this court, speaking of a twelve year old prosecutrix, stated in *Commonwealth v. Tuck,* 169 Pa.Super. 35, 38, 82 A.2d 288, 290 (1958): "Consent involves submission, but a mere submission by no means necessarily involves consent." We went on to quote a statement by the California Supreme Court: "[T]he age and mentality of the subject of an indecent assault is important, and should always be considered in determining the presence or absence of consent. The mere submission of a child of tender years or retarded mental development to an attempted outrage of its person should not, in and of itself, be construed to be such consent as

would, in point of law, justify or excuse the assault." *Id.* Concluding our discussion, we said: "Submission to lewd touching without protest or physical resistance may well be strong evidence of consent by an *adult* female, but it is unrealistic and contrary to human experience to apply the same standard to a child of twelve." *Id.*, 169 Pa.Superior Ct. at 39, 82 A.2d at 290. *Cf. Commonwealth v. Wolff,* 273 Pa.Super. 27, 31, 416 A.2d 1072, 1074 (1979) (when corruption of minor is charged, minor's consent is not an issue).

■ Nor could the first jury have rationally found that the victim was unaware that an indecent contact was occurring. In her testimony at the first trial regarding the alleged indecent contact, the victim was asked on direct examination, "Did you think this was okay what he was doing?" and she replied, "No." N.T. 3/5/82, at 14. On cross-examination, the following testimony was elicited:

Q. [T]he whole time this was happening, all these things were happening to you on this day, what were you thinking?

A. I was scared.

Q. Who or what were you scared of?

A. Tom [appellant].

*Id.* at 19.

■ A review of the record conducted in the spirit set forth by *Ashe* and *Hude* therefore compels us to conclude that the first jury must have acquitted appellant of indecent assault because it had a reasonable doubt, perhaps about whether he had touched the victim at all, but at least about whether he had had any indecent contact with her. From this conclusion it follows that the trial court erred in admitting the victim's testimony at the second trial that appellant had put his hand up her underpants. For by its ruling the court gave the jury an option it was not entitled to have: specifically, the court permitted the jury to find that appellant was guilty of corrupting the victim's morals because he had indecently assaulted her, this in face of the first jury's verdict acquitting appellant of indecently assaulting her. It

is precisely such relitigation of an already determined issue that the doctrine of collateral estoppel precludes.[1] The second trial should have been confined to the issues that had not been determined by the first jury: whether appellant had indecently exposed himself, and if he had, whether by doing so he had corrupted the victim's morals.[2]

Other cases have presented the same problem as we are presented with here, and have reached the same conclusion. In *Commonwealth v. Steppke*, 267 Pa.Super. 442, 406 A.2d 1123 (1979), the defendant, a police captain, was implicated in a scheme to doctor records of a criminal incident involving the mayor's daughter. He was charged with solicitation to tamper with public records, attempt to tamper with public records, obstructing the administration of law, and conspiracy. The jury found him not guilty of solicitation to tamper and attempt to tamper but was unable to reach a verdict on obstruction and conspiracy. On appeal, the issue

1. It should also be noted that as a practical matter it is wholly possible, if not probable, that the second jury more readily accepted the victim's testimony regarding the indecent exposure because it heard the testimony regarding the indecent assault. The one may have been seen as corroborating the other.

2. Appellant argues that evidence of indecent exposure cannot by itself support a conviction of corruption of the morals of a minor, but the argument is without merit. Corruption of a minor can involve

> conduct towards a child in an unlimited number of ways. The purpose of such statutes is basically protective in nature. These statutes are designed to cover a broad range of conduct in order to safeguard the welfare and security of our children. Because of the diverse types of conduct that must be proscribed, such statutes must be drawn broadly. It would be impossible to enumerate every particular act against which our children need be protected.

*Commonwealth v. Burak*, 232 Pa. 499, 505, 335 A.2d 820, 822 (1975) (citations omitted).

The Commonwealth need not prove that the defendant's acts actually corrupted the minor's morals but only that they tended to do so. Nor is the Commonwealth required to prove any particular sort or number of acts. *Commonwealth v. Wolff*, 273 Pa.Super. 27, 31, 416 A.2d 1072, 1074 (1979). *See generally Commonwealth v. Randall*, 183 Pa.Super. 603, 611, 133 A.2d 276, 280 (1957), *cert. denied*, 355 U.S. 954, 78 S.Ct. 539, 2 L.Ed.2d 530 (1958) ("The common sense of the community, as well as the sense of decency, propriety and the morality which most people entertain is sufficient to apply the statute to each particular case, and to individuate what particular conduct is rendered criminal by it.").

was whether a second trial on obstruction and conspiracy was barred by collateral estoppel and the double jeopardy clause. We held that while double jeopardy did not preclude a second trial, at that second trial the Commonwealth could not try to prove obstruction and conspiracy by evidence of the defendant's solicitation or attempt to tamper with public records. In *In the Interest of R.R., Juvenile,* 317 Pa.Super. 334, 464 A.2d 348 (1983), this issue arose in the context of successive prosecutions by the Commonwealth. The defendant had been acquitted of three summary violations of the Motor Vehicle Code. Subsequently, the Commonwealth filed charges against the defendant in Juvenile Court for receiving stolen property, unauthorized use of a motor vehicle and homicide by vehicle—all arising out of the same incident as that from which the summary violations arose. On appeal, the principal question was whether the prior acquittals barred a subsequent prosecution for homicide by vehicle. We held that although the prosecution itself was not barred because the Commonwealth had not enumerated the specific underlying violations for the homicide by vehicle count, the Commonwealth would not be permitted to try to prove homicide by vehicle by evidence of the incidents from which the summary violations had arisen, and of which the defendant had been acquitted. *See also United States v. Mespoulede,* 597 F.2d 329 (2d Cir.1979) (where defendant acquitted on drug possession charge but mistrial declared on conspiracy to distribute charge, collateral estoppel precludes introduction at second trial of evidence regarding possession); *United States v. Simon,* 225 F.2d 260 (3d Cir.1955) (defendant's acquittal at first trial on charge of receiving stolen turkeys precluded admission of evidence of receiving at second trial on charge of possession of stolen turkeys).

■ Appellant has argued issues in addition to the collateral estoppel issue but these may be disposed of briefly. Appellant argues that the trial court erred in denying his demurrer to all the charges. Brief for Appellant at 17–18. This argument is without merit, for following the court's

ruling, appellant presented evidence in defense. *Commonwealth v. Bishop,* 489 Pa. 96, 413 A.2d 1031, 1035 (1980) (once defendant offers evidence after his demurrer has been overruled, the propriety of the ruling on the demurrer is not available on appeal). *See also Commonwealth v. Ilgenfritz,* 466 Pa. 345, 347 n. *, 353 A.2d 387, 388 n. *. Appellant also argues that the trial court sustained the Commonwealth's objection to "a vital part" of his own testimony. Brief for Appellant at 19. We have examined the portion of the transcript cited to us and find that it does not support this argument; the objection in question was sustained because appellant's answer was unresponsive.

The judgments of sentence are reversed and the case is remanded for a new trial consistent with this opinion.