J-S17041-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DEMETRIUS CLAUSELL | |
| Appellant | No. 1504 EDA 2021 |

Appeal from the Judgment of Sentence Entered July 8, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0007166-2017

BEFORE:  BOWES, J., LAZARUS, J., and STABILE, J.

MEMORANDUM BY STABILE, J.:                    **FILED SEPTEMBER 01, 2022**

Appellant, Demetrius Clausell, appeals from the July 8, 2021 judgment of sentence, imposed after revocation of probation, of an aggregate three to six years of incarceration followed by three years of probation.  We affirm.

The trial court set forth the pertinent facts and procedural history in its Pa.R.A.P. 1925(a) opinion:

> The underlying arrest stemmed from the execution of a search warrant on July 21, 2017 of Appellant's residence at 405 Kerper Street, Apartment 1, in the City and County of Philadelphia.  Appellant was present during the search when investigators recovered seventy-four (74) grams of crack-cocaine, a forty-caliber cartridge, a nine-millimeter magazine, as well as a revolver and a forty-caliber handgun.  Appellant was subsequently arrested and arraigned.  On September 17, 2018, Appellant tendered to this Court a fully negotiated guilty plea to two felony offenses, Manufacture, Delivery, Possession with Intent to Manufacture or Deliver, ungraded felony, 35 [P.S. § 780-113(a)(30)] and Violation of the Uniform Firearms Act-Possession of a Firearm Prohibited, [first-degree felony, 18

Pa.C.S.A. § 6105(a)(1)]. Consistent with negotiations facilitated by and between counsel, this court sentenced Appellant to concurrent terms of eleven and a half (11.5) months to twenty-three (23) months of county incarceration, followed by five (5) years of probation for each charge. […] Appellant was verbally warned that this court had accepted very merciful negotiations well below recommended guidelines with the caveat that his violation of the terms and conditions of his probation, could result in imposition of confinement to a term of up to thirty (30) years.

[…]

On February 7, 2019, Appellant petitioned for parole and this Court granted his motion the following day following hearing. Appellant was once again cautioned to follow the terms and conditions of his probation. Despite his explicit promise to abide by those conditions, Appellant tested positive for cocaine on November 19, 2019. Contrary to the language of the order of Sentence that had directed a hearing to occur upon revelation of the 'first hot urine,' the Adult Probation and Parole Department never informed this court of Appellant's positive drug test. On March 10, 2020, Appellant reported that he had been 'unable to provide a sample.' This refusal reflected a presumed positive finding. Again, no immediate consequence resulted. Thereafter, the Covid-19 pandemic afflicted the world, and Appellant received little supervision and was required to only occasionally call his assigned probation officer.

On May 15, 2020, around 5:00 p.m., Appellant was arrested and charged for allegedly riding an ATV recklessly and erratically throughout a myriad of residential neighborhoods and streets in Philadelphia and for fleeing pursuing law enforcement responders. Philadelphia Police Officer Zachary Stout and his partner, Officer Rosinkski (first name unknown) had reported that on that same date and time they had been assigned to the City-Wide ATV/Dirt Bike Detail in an unmarked police vehicle, wearing plain clothes. Officer Stout testified that they were in the 35th and the 2nd police districts following flash information provided by Tact Air III (police helicopter). Tact Air III provided the patrolling officers with information that a black male wearing a white shirt and black pants, had been riding a red and blue ATV erratically throughout the area of the 2nd and 35th Districts.

Those large districts are located within the Northeast and Northwest section of the city.

As Officer Stout and his partner responded, the male that had been described by and followed by Tact Air III had crossed directly in front of their automobile. Officer Stout and about ten (10) motorcycle officers, other marked and unmarked police vehicles, as well as the Tact Air III police helicopter followed Appellant for roughly forty-five (45) minutes; officers attempted multiple times to stop Appellant and signal him to pull his ATV over to no avail. Officers Stout and Rosinski followed Appellant for about twenty (20) minutes, observing him 'riding erratically on the ATV, going the wrong way up one-ways, riding on sidewalks, riding head-on into traffic, completely disregarding red lights, stop lights, stop signs, everything.' Officer Stout estimated the ATV driver was going about fifty (50) to (60) miles per hour on residential streets that had been posted to permit only twenty-five (25) to thirty-five (35) miles per hour. Pedestrians jumped out of the path of travel.

Appellant eventually jumped off the ATV on the 2000 block of West Champlost Street in the City and County of Philadelphia and attempted to blend himself within a number of people including children who had been attending a barbecue and block party. His unsuccessful attempt to flee on foot ended because Officers had naturally kept in him in their sight and apprehended him; [Appellant] was charged with various criminal offenses including Recklessly Endangering Another Person ("REAP") and Fleeing or Attempting to Allude [sic] a Police Officer.

After the arrest, on May 17, 2020, the Honorable Idee Fox issued a Probation Violation Bench Warrant due to Appellant's commensurate failure to report as directed to the probation department which had been finally noticed and reported by the probation department. Appellant's *Gagnon I*[1] Summary was filed on May 26, 2020, and his Motion to Remove Detainer was denied by the Honorable Zachary Shaffer on May 28, 2020. On May 29th, an additional detainer was issued and set to remain pending a *Gagnon II* Violation of Probation hearing before this Court. Appellant's *Gagnon II* Summary was filed on June 26,

---

[1] *Gagnon v. Scarpelli*, 411 U.S. 778 (1973).

2020. The **Gagnon** reports detailed all alleged violations and provided due notice.

Appellant's violation or revocation evidentiary hearing took place before this court on October 5, 2020. The Commonwealth presented Philadelphia Police Officer Zachary Stout who credibly related the events of May 15, 2020 and Appellant's extended ATV flight. The positive drug test and refusal to submit to subsequent testing and noncompliance with the probation department was admitted. LaDreya Mack, Appellant's girlfriend and the mother of his children, testified that Appellant was a good father and provider for his family. She also testified that she had been aware of his propensity to ride the ATV and revealed the location of her garage wherein he had kept the vehicle; she claimed did not know [sic] he had been riding the ATV on the day of his arrest; she acknowledged his drug addiction and impulsive immaturity.

During the violation hearing, Appellant testified incredibly and contradicted himself; he admitted that he had been riding the ATV that day, but he denied that he was the person who had been dangerously driving the ATV during the extensive pursuit. According to Appellant, he was riding his ATV, but that his bike just happened to have been parked on the side of the area where Officer Stout had found him, and it must have been some other mysterious man who they had been following.

Trial Court Opinion, 9/21/21, at 2-5 (record citations omitted).

At the conclusion of the revocation proceedings, the trial court imposed sentence as set forth above. This timely appeal followed. Appellant argues that the evidence in support of revocation was insufficient, and that the trial court abused its discretion in imposing a sentence of incarceration. Appellant's Brief at 6.

Our review is limited to determining the validity of the probation revocation proceedings and the authority of the sentencing court to consider the same sentencing alternatives that it had at the time of the initial sentencing. 42 Pa.C.S.A. § 9771(b). **See also Commonwealth v. Gheen**, […] 688 A.2d

- 4 -

1206, 1207 (Pa. Super. 1997) (the scope of review in an appeal following a sentence imposed after probation revocation is limited to the validity of the revocation proceedings and the legality of the judgment of sentence). Also, upon sentencing following a revocation of probation, the trial court is limited only by the maximum sentence that it could have imposed originally at the time of the probationary sentence. **_Id_.** at 1207-08. Finally, it is the law of this Commonwealth that once probation has been revoked, a sentence of total confinement may be imposed if any of the following conditions exist:

(1) the defendant has been convicted of another crime; or

(2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or,

(3) such a sentence is essential to vindicate the authority of court.

42 Pa.C.S.A. § 9771(c). Presently, Appellant challenges the discretionary aspects of his sentence.

**_Commonwealth v. Fish_**, 752 A.2d 921, 923 (Pa. Super. 2000) (some citation omitted); **_see also_**, Pa.R.Crim.P. 708. "Unlike a criminal trial where the burden is upon the Commonwealth to establish all of the requisite elements of the offenses charged beyond a reasonable doubt, at a revocation hearing the Commonwealth need only prove a violation of probation by a preponderance of the evidence." **_Commonwealth v. Moriarty_**, 180 A.3d 1279, 1286 (Pa. Super. 2018).

In his first assertion of error, Appellant argues the evidence of his violation is insufficient because Officer Stout, in his testimony at the **_Gagnon II_** hearing was not sufficiently specific as to the exact locations of his pursuit of Appellant. Appellant also notes that charges stemming from the ATV incident were withdrawn. The trial explained:

> As to what happened in the open case, then open case, there is no finding of not guilty. There is – depending on who was at fault for not properly preparing the open matter, it did not proceed.

Trial Court Opinion, 9/21/21, at 8. We are cognizant that revocation of probation cannot be based on acquittal. ***Commonwealth v. Brown***, 469 A.2d 1371 (Pa. 1983). But there was no acquittal here, nor was the dismissal of the charges based on evidence that Appellant was innocent. Furthermore, Appellant's two failed drug tests—one positive and one presumed positive—were independent bases for finding Appellant in violation of his probation. The trial court therefore found, given Appellant's reckless and dangerous behavior as eye witnessed by Officer Stout, that Appellant was likely to commit another crime if not imprisoned. The court also noted that Appellant persisted in drug use despite receiving a lenient, below-guideline sentence on the underlying drug and firearm offenses. Thus, the court also reasoned that imprisonment would vindicate its authority. Trial Court Opinion, 9/21/21, at 15-18.

We have reviewed the record, the applicable law, the parties' briefs, and the trial court opinion. We conclude that the trial court thoroughly and accurately addresses Appellant's sufficiency of the evidence argument and we reject Appellant's argument on the basis of the trial court's well-reasoned opinion of September 21, 2021.

Appellant's second assertion of error challenges the trial court's sentencing discretion. The Rules of Appellate Procedure require appellants

to preserve this issue in a concise statement of the reasons relied upon for allowance of appeal.

> **(f) Discretionary aspects of sentence.** An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in a separate section of the brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of the sentence.

Pa.R.A.P. 2119(f). A Rule 2119(f) statement is required in revocation cases. *Fish*, 752 A.2d at 923. Where an appellant fails to comply with Rule 2119(f) and the Commonwealth objects, the issue is waived. ***Commonwealth v. Griffin***, 149 A.3d 349 (Pa. Super. 2016). Appellant's brief does not include a 2119(f) statement, and the Commonwealth has objected. Commonwealth's Brief at 6-7. This issue is waived. Were we to address this issue on the merits, we would reject Appellant's argument based on the trial court's opinion.

For the foregoing reasons, we affirm the judgment of sentence and direct that a copy of the trial court's September 21, 2021 opinion be filed along with this memorandum.

Judgment of sentence affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*

*Date: 9/1/2022*

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA      )    CP-51-CR-0007166-2017
                                                )
                                                )
                                                )

VS.                                                    )
                                               )
                                               )    SUPERIOR COURT
                                               )    NO. 1504 EDA 2021

DEMETRIUS CLAUSELL                                 )

**FILED**

SEP 21 2021

Appeals/Post Trial
Office of Judicial Records

<u>OPINION</u>

Demetrius Clausell, as the above-named Defendant and Appellant, seeks review of the Order and Judgement of Sentence imposed on July 8, 2021 by the Honorable Anne Marie Coyle, Judge of the Court of Common Pleas for the First Judicial District Criminal Division, hereinafter referred to as "this Court". Appellant challenges the sentence imposed following revocation of the probation periods of supervision due to violations of the terms and conditions set forth in the previously imposed Orders of Sentence entered on September 19, 2018. Appellant complains that the underlying revocation decisions had not been supported by evidence of violating conduct and that the resulting Orders of Sentence had constituted an abuse of discretion. The transcribed record does not support either appellate claim as recited.

-1-

# I. FACTUAL AND PROCEDURAL HISTORY

The underlying arrest stemmed from the execution of a search warrant on July 21, 2017 of Appellant's residence at 405 Kerper Street, Apartment 1, in the City and County of Philadelphia. Appellant was present during the search when investigators recovered seventy-four (74) grams of crack-cocaine, a forty-caliber cartridge, a nine-millimeter magazine, as well as a revolver and a forty-caliber handgun. Appellant was subsequently arrested and arraigned. On September 17, 2018, Appellant tendered to this Court a fully negotiated guilty plea to two felony offenses, Manufacture, Delivery, Possession with Intent to Manufacture or Deliver, ungraded felony, 35 § 780 §§ A30 and Violation of the Uniform Firearms Act-Possession of a Firearm Prohibited, F1, 18 § 6105 §§ A1. Consistent with negotiations facilitated by and between counsel, this Court sentenced Appellant to concurrent terms of eleven and a half (11.5) months to twenty-three (23) months of county incarceration, followed by five (5) years of reporting probation for each charge.

Commensurate with imposition of sentence, the specific conditions of parole and probation were verbally recited and included within the written Orders entered by this Court on September 17, 2018 and reiterated in the parole/probation documents that had been signed as agreed and acknowledged by Appellant. Those supervisory terms included, but weren't limited to the following: reporting as directed to his supervising parole or probation authorities; providing legitimate residence data; complying with all recommended mental health and drug/alcohol treatments and submitting to random drug and alcohol testing; actively participating in counseling and anger management counseling; having zero contact with victims/witnesses; having zero contact with illegal narcotics and weapons, either on his person, in a home or a vehicle; submitting to random home and vehicle inspections for illegal narcotics and weapons; completing vocational training; and upon release for custody, seeking and maintaining legitimate employment and

providing proof of efforts to his supervising agents. Appellant received due custodial credit for time served. Additionally, Appellant was verbally warned that this Court had accepted very merciful negotiations well below recommended guidelines with the caveat that his violation of the terms and conditions of his probation, could result in imposition of confinement to a term of up to thirty (30) years. (*See* N.T. 9/17/18, p. 16).

On February 7, 2019, Appellant petitioned for parole and this Court granted his motion the following day following hearing. Appellant was once again cautioned to follow the terms and conditions of his probation. Despite his explicit promise to abide by those conditions, Appellant tested positive for cocaine on November 19, 2019. Contrary to the language of the Order of Sentence that had directed a hearing to occur upon revelation of the "first hot urine," the Adult Probation and Parole Department never informed this Court of Appellant's positive drug test. On March 10, 2020, Appellant reported that he had been "unable to provide a sample." This refusal reflected presumed positive finding. Again, no immediate consequence resulted. Thereafter, the COVID-19 pandemic afflicted the world, and Appellant received little supervision and was required to only occasionally call his assigned probation officer.

On May 15, 2020, around 5:00 p.m., Appellant was arrested and charged for allegedly riding an ATV recklessly and erratically throughout a myriad of residential neighborhoods and streets in Philadelphia and for fleeing pursuing law enforcement responders. Philadelphia Police Officer Zachary Stout and his partner, Officer Rosinski (first name unknown) had reported that on that same date and time they had been assigned to the City-Wide ATV/Dirt Bike Detail in an unmarked police vehicle, wearing plain clothes. Officer Stout testified that they were in the 35th and the 2nd police districts following flash information provided by Tact Air III (police helicopter). Tact Air III provided the patrolling officers with information that a black male wearing a white

-3-

shirt and black pants, had been riding a red and blue was ATV erratically throughout the area of the 2nd and 35th Districts. Those large districts are located within the Northeast and Northwest section of the city.

As Officer Stout and his partner responded, the male that had been described by and followed by Tact Air III had crossed directly and dangerously in front of their automobile. (N.T. 10/5/20, pp. 28-29, 31). Officer Stout and about ten (10) motorcycle officers, other marked and unmarked police vehicles, as well as the Tact Air III police helicopter followed Appellant for roughly forty-five (45) minute; officers attempted multiple times to stop Appellant and signal him to pull his ATV over to no avail. Officers Stout and Rosinski followed Appellant for about twenty (20) minutes, observing him "riding erratically on the ATV, going the wrong way up one-ways, riding on sidewalks, riding head-on into traffic, completely disregarding red lights, stop lights, stop signs, everything." (Id. at 30). Officer Stout estimated that the ATV driver was going about fifty (50) to sixty (60) miles per hour on residential streets that had been posted to permit only twenty-five (25) to thirty-five (35) miles per hour. Pedestrians jumped out of the path of travel. (Id. at 31).

Appellant eventually jumped off the ATV on the 2000 block of West Champlost Street in the City and County of Philadelphia and attempted to blend himself within a number of people including children who had been attending a barbecue and block party. His unsuccessful attempt to flee on foot ended because Officers had naturally kept him in their sight and apprehended him; Mr. Clausell was charged with various criminal offenses including Recklessly Endangering Another Person ("REAP") and Fleeing or Attempting to Allude a Police Officer.

After the arrest, on May 17, 2020, the Honorable Idee Fox issued a Probation Violation Bench Warrant due to Appellant's commensurate failure to report as directed to the probation

-4-

department which had been finally noticed and reported by the probation department. Appellant's Gagnon I Summary was filed on May 26, 2020, and his Motion to Remove Detainer was denied by the Honorable Zachary Shaffer on May 28, 2020. On May 29th, an additional detainer was issued and set to remain pending a Gagnon II Violation of Probation hearing before this Court. Appellant's Gagnon II Summary was filed on June 26, 2020. The GAGNON reports detailed all alleged violations and provided due notice.

Appellant's violation or revocation evidentiary hearing took place before this Court on October 5, 2020. The Commonwealth presented Philadelphia Police Officer Zachary Stout who credibly related the events of May 15, 2020 and Appellants extended ATV flight. The positive drug test and refusal to submit to subsequent testing and noncompliance with the probation department was admitted. LaDreya Mack, Appellant's girlfriend and the mother of his children, testified that Appellant was a good father and provider for his family. She also testified that she had been aware of his propensity to ride the ATV and revealed the location of her garage wherein he had kept the vehicle; she claimed did not know he had been riding the ATV on the day of his arrest; she acknowledged his drug addiction and impulsive immaturity.

During the violation hearing, Appellant testified incredibly and contradicted himself; he admitted that he had been riding an ATV that day, but he denied that he was the person who had been dangerously driving the ATV during the extensive pursuit. According to Appellant, he was riding his ATV, but that his bike just happened to have been parked on the side of the area where Officer Stout had found him, and it must have been some other mysterious man who they had been following. (Id. at 56-57). After hearing the evidence and respective arguments on behalf of the Commonwealth and Appellant, this Court determined that Appellant had violated the previously acknowledged terms and conditions of his probation and that his cumulative conduct deserved

-5-

revocation. His actions had been deemed dangerous and violative of the probationary period of the Order of Sentence.

Following revocation of probation, Appellant remained remanded to county custody, and pre-sentence and mental health evaluations were ordered in advance of formal sentencing. Thereafter, multiple continuances of Appellant's sentencing hearing were granted largely due to difficulties related to the COVID-19 pandemic, specifically the "Shelter in Place Order" followed by prison authorities.

On February 25, 2021, after full and fair evidentiary hearing and thoughtful consideration of all relevant sentencing factors, the following sentence was imposed:

> **Count 1:** Manufacture, Delivery, Possession with Intent to Manufacture or Deliver, ungraded felony, 35 § 780 §§ A30: Minimum three (3) years and six (6) months to maximum seven (7) years of state supervised term confinement, followed by three (3) years county regular probation;
>
> **Count 2:** Violation of the Uniform Firearms Act-Possession of a Firearm Prohibited, F1, 18 § 6105 §§ A1: Minimum three (3) years and six (6) months to maximum seven (7) years of state supervised term confinement, followed by three (3) years county regular probation, to run concurrently with Count 1.

Thus, the aggregate sentence imposed was a minimum period of three (3) years and six (6) months to seven (7) years of state supervised confinement, followed by three (3) years of reporting probation. Many of the previously directed supervisory and rehabilitative conditions were reinstated and recited verbally as well as incorporated within Order and Judgement of Sentence Additional conditions were imposed including the following directions: (1) that Appellant does not operate an ATV, nor is a passenger on any ATV, and (2) that he attends parenting classes.

On March 5, 2021, Appellant filed a timely counselled post-sentence motion, wherein he raised the following arguments:

> A. "This Court should have granted the continuance request and should schedule a new Gagnon II hearing."

-6-

B. "Insufficient evidence existed to support the violations for fleeing and eluding and REAP."

C. "This Court should resentence Mr. Clausell based only on the cocaine violation."

On March 5, 2021, this Court granted an evidentiary hearing concerning the defense post-sentence motions. Again, postponements occurred due to ongoing court administrative scheduling pandemic difficulties. Thereafter, a hearing to determine the merit of Appellant's post-sentence motion was scheduled for June 21, 2021. However, this hearing was postponed because this Court was conducting a jury trial.

On July 8, 2021, a hearing was held concerning the defense post-sentence motions. Defense counsel argued for Appellant to be boot camp eligible again and reiterated the arguments in his motion on the record; namely, (1) that this Court should have waited for the outcome of Appellant's open matter to render a decision on his VOP, (2) that insufficient evidence existed to support the finding of violation for fleeing/eluding, and REAP, citing the opinion that the testifying officer was not credible, and (3) that Appellant should only be held accountable for the positive drug test. The Commonwealth presented additional thoughts. Additionally, Mr. Clausell was again permitted to allocate.

After a full and fair evidentiary hearing and careful thought and consideration, this Court denied in part and granted in part defense's post-sentence motion, stating the following reasoning on the record:

> **THE COURT:** All right. Well, while I am looking for a copy of my order of sentence to review myself of some things, with respect to the record and the motions that have been filed, I am going to deny in part and grant in part the defense motions.
> Number one, I'll incorporate the arguments of the Commonwealth because the Commonwealth is correct. The evidence that was presented before me by the credible officer that testified demonstrated quite clearly that the defendant engaged in extraordinarily reckless conduct that comports with the statutes at issue.

-7-

In addition, the defendant himself admitted to being on the ATV in his testimony. The defendant's girlfriend admitted that Mr. Clausell frequently would need "to get air and drive his ATV."

The conduct that was reported and viewed directly by Officer Stout was most reckless and most concerning because Mr. Clausell is old enough to know better and should know better and does know better, but he chose to act differently.

As to what happened in the open case, then open case, there is no finding of not guilty. There is -- depending on who was at fault for not properly preparing the open matter, it did not proceed. And the evidence supported revocation after all of the cumulative evidence was derived by this Court. And it was particularly violative of the order of sentence because he conducted criminal behavior and also he was positive for cocaine use.

Within the reviewed presentence investigative and mental health assessments, Mr. Clausell's cocaine use reportedly went back to the age of 14. Despite attempts to rehabilitate him, obviously, he had slid back. That was also a technical... violation of this order of sentence.

All of the combined information, including the positive steps that Mr. Clausell did take with respect to OPTIONS, I took into consideration before sentencing.

I also note that while in county, the defendant was disciplined for at least one institutional misconduct. Now, it was very minor in nature, and it didn't impact my sentence in any way, shape or form; but to clarify the record, there were some difficulties even waiting for this matter to be concluded...

All right. Mr. Clausell, I reviewed all of the information imparted to me in detail multiple times. Let's start with the... significantly serious charges for which you were before this Court and pursuant to the negotiations and received a sentence that had been well below the guidelines and merciful in nature extended to you by the Commonwealth. The offense gravity score at that time was a ten. The prior record score was a four. The standard range was 48 to 60, plus or minus 12, as it related to the drug dealing charge. And the Violation of the Uniform Firearms Act under Section 6105 was also at issue.

Despite the severity of that, Mr. Clausell, pursuant to negotiations, received a sentence of 11-and-a-half to 23 months followed by five years of reporting probation on each charge. Periods of confinement were run concurrently. Periods of probation were run concurrently to each other. The period of probation was to run consecutively to the period of confinement. A strict condition was no drug use. First hot urine, he was supposed to come back to me. I retained jurisdiction over this entire sentence. It was a county sentence and probation.

I noted the positive aspects of Mr. Clausell. I noted the negative aspects and conduct of Mr. Clausell. And a few notations that I'll highlight in addition to

incorporating my prior findings, Mr. Clausell, unlike many of the people that come before me, had many gifts to offer in life. He had the support of his girlfriend, Ms. Mack, who stood with him through thick and thin, worked tremendously hard while she pursued her dreams, or tried to, through La Salle, et cetera, who forgave him over and over again and tried to help Mr. Clausell along the way in addition to being mother to his child or children.

Mr. Clausell's history was most concerning in that there was a prediction therein that future criminal conduct would occur. That was the reason why my original sentence incorporated the very strict supervision and assignment of Mr. Clausell to the anti-violence unit, if memory serves me correctly. I didn't put in play those conditions because I like to talk. I put those conditions in to make sure that we wouldn't have a return to a matter involving a .45 caliber firearm as well as a .9 millimeter and 74 grams of crack cocaine resurfacing.

Mr. Clausell's reported behavior during the revocation hearing was most concerning because despite have all of these abilities and clearly mental acuity beyond most folks, he disregarded the safety of every other human being that was out in those residential neighborhoods on the day at issue and he tried to hide from his family and/or everyone else his return to cocaine use.

If I recall correctly, Mr. Clausell's excuse given to me, "well, she and I were on a break; that's why she didn't know about that." Ms. Mack enabled, to a certain extent, Mr. Clausell's behavior by permitting the garage to facilitate his continued use of the ATV to let him, I guess, blow off steam or get air for whatever -- I forget what the phrase was.

You know, kindness and mercy has been extended to Mr. Clausell on multiple occasions, including by this Court. So under the section of 9771, revocation was completely due because it was clear to this Court that no other option was available. It was disrespectful to the order of sentence. It posed a high risk of future recidivism. And the other sections that I mentioned were at issue.

I really also have difficulty with the defense continued argument as to what Mr. Clausell was doing when he admitted he was on the ATV. Granted, he didn't agree that his behavior was to the extent as testified by the officer, but okay. All right. I found differently. I'm the finder of fact. And under the standards at issue, I found that he did act dangerously. And he's very lucky that someone wasn't killed.

Now, as to sentencing, the prior order of sentence took into consideration all of Mr. Clausell's reported history, all of the good that he did, the circumstances that he presented as testified and reported to this Court very succinctly by counsel, by the presentence investigator, the mental health investigator and Mr. Clausell himself.

I do accept the fact that Mr. Clausell is sorry. And while I don't know whether he's sorry because he's still in jail or whether or he's sorry for the behavior that caused him to return to it, I did accept that there is a level of remorse.

I did view boot camp as a potential avenue to try to set Mr. Clausell straight for the future despite the failed attempts previously, not only under this order of sentence but whatever else he had and his history that I recited. I'm not going to go through all of that all over again.

So the order of sentence that I entered on February 25, 2021 did, in fact, take into account everything. Now, I will accept the representation that a three-to-six-year sentence would make Mr. Clausell more eligible for boot camp, although, quite frankly, if memory serves me correctly, that's not necessarily the case, which is why I waived -- the DA waived an ineligibility objection. I deemed him to be boot camp eligible while not RRRI eligible.

So I will reduce my sentence accordingly and give greater weight to the efforts reportedly made by Mr. Clausell to improve. So, first of all, I'm going to go over the order of sentence conditions that I expect to be met. Number one, the defendant will receive credit for time served on this case only as calculate by the prison authorities. The previous detainer remains lifted. The defendant remains boot comp eligible. The ADA, I'm assuming, continues to waive eligibility.

**MS. LAWLESS:** Yes, Your Honor.

**THE COURT:** The defendant, because of the nature of the charges, is not RRRI eligible, which is why we tried to accommodate the efforts to get him into boot camp. I don't know whether or not boot camp will accept Mr. Clausell due to, particularly, the gun charge. 6105 means that he was in possession of firearms -- actually I think there were two at issue -- while prohibited from so doing due to his prior convictions and/or adjudication.

So that gives boot camp pause, and they may not accept Mr. Clausell. I really don't know, but I do know this, that he has to apply for it. It can't be done for him, which is one of the problems of Mr. Clausell. Everybody else does things for him. So you are going to have to exercise initiative.

In addition, I will reorder, as part of this order of sentence, a full drug and alcohol evaluation. You are to comply with any recommended drug and alcohol treatment. You will submit to drug and alcohol screening. Your first hot urine is to result in a violation hearing. You are prohibited from having anything to do with any illegal narcotics or weapons; that means no direct contact, no indirect contact, no third-party contact, no posting on social media of same or proceeds of same.

You may not reside in any home where there are illegal narcotics or weapons located. You may not be in any vehicle where any illegal narcotics or

-10-

weapons are located. You may not operate any ATV or be even a passenger on an ATV while under this Court's supervision. You will seek out vocational training because upon your release, you will need to obtain and maintain legitimate employment and provide proof of same.

You've completed your parenting classes. I'll accept that representation. So I'll delete that for now... I'll just leave it as vocational training. You will submit to random home checks and auto checks for illegal drugs and/or weapons. You will be intensively supervised upon parole.

All right. The sentence of this Court: To Count 1, manufacture, delivery or possession with the intent to manufacture, deliver a controlled substances as an ungraded felony, the sentence of this Court is that you serve three years to six years followed by three years of reporting probation, also supervised by the state.

Your three to six years is pursuant to the state correctional supervision confinement. The probationary period of three years will be supervised by the state and run consecutively to the confinement.

The same sentence is imposed on Count 2, possession of a firearm as a prohibited person as a felony of the first degree, sir, the sentence of this Court is three years to six years state form of confinement followed by three years of reporting probation. The period of probation will run consecutively to the period of confinement. All periods of confinement will run concurrently with each other, that is, at the same time. All periods of probation will run concurrently with each, that is, at the same time. Regular fines and costs.

(N.T. 7/8/21, p. 16-24).

Thus, Appellant's total aggregate sentence was reduced to a term of three (3) to six (6) years of state supervised confinement, followed by three (3) years of reporting probation. Although Appellant did not qualify for RRRI programs and boot camp due to the nature of the original offenses, this Court and the prosecutor waived objections to boot camp ineligibility. The previous probationary terms were reinstated in full. Credit for custodial time was provided.

On July 27, 2021, Appellant filed a Notice of Appeal to the Superior Court of Pennsylvania. A Statement of Matters Complained of on Appeal pursuant to Pa. R.A.P.

-11-

Rule 1925 (b) was directed by this Court and filed on behalf of Appellant on August 5, 2021.

## II.   ISSUES ON APPEAL

Appellant has raised the following claims:

1.   "The sentence imposed by the Trial Court is an abuse of discretion."

2.   "Insufficient evidence existed to support technical violations for Fleeing/Eluding and REAP."

## III.   DISCUSSION

Within his Statement of Matters Complained of on Appeal filed pursuant to Pa.R.A.P. §1925(b), Appellant alleges that the sentence imposed by the trial court was an abuse of discretion. Appellant also argued that insufficient evidence existed to support the technical violations for Fleeing/Eluding and Recklessly Endangering Another Person. A full and fair review of the record and all evidence reflects that Appellant's claims lacked factual and legal merit.

The scope of appellate review of a sentence that had been imposed following the revocation of probation is limited to the validity of the revocation proceedings, the legality of the sentence imposed following revocation, and any challenge to the discretionary aspects of the sentence imposed. *Commonwealth v. Wright*, 2015 PA Super 116, 116 A.3d 133, 136 (Pa. Super. 2015) (citation omitted). Imposition of sentences following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal. An abuse of discretion is more than an error in judgment - a sentencing court has not abused its discretion unless the record discloses that the judgment exercised was manifestly

-12-

unreasonable, or the result of partiality, prejudice, bias or ill-will. *Commonwealth v. Colon*, 2014 PA Super 242, 102 A.3d 1033, 1043 (Pa. Super. 2014).

In this Commonwealth, the trial court's common law and statutorily based authority to impose a term of probation has been set forth as follows:

> "Whenever any person shall be found guilty of any criminal offense by verdict of a jury, plea, or otherwise, except murder in the first degree, in any court of this Commonwealth, the court shall have the power, in its discretion, if it believes the character of the person and the circumstances of the case to be such that he is not likely again to engage in a course of criminal conduct and that the public good does not demand or require the imposition of a sentence of imprisonment, instead of imposing such sentence, to place the person on probation for such definite period as the court shall direct, not exceeding the maximum period of imprisonment allowed by law for the offense for which such sentence might be imposed."

61 P.S. § 331.25.

Moreover, Pennsylvania Rule of Criminal Procedure Rule 1409 provides: "Whenever a defendant has been placed on probation or parole, the judge shall not revoke such probation or parole as allowed by law unless there has been a hearing held as speedily as possible at which the defendant is present and represented by counsel and there has been a finding of record that the defendant violated a condition of probation or parole . . . ." *See Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Commonwealth ex rel. Rambeau v. Rundle*, 455 Pa. 8, 314 A.2d 842 (1973); *Commonwealth v. Davis*, 234 Pa. Super. 31, 336 A.2d 616 (1975).

When imposing a sentence of total confinement after a probation revocation, the sentencing court is to consider the factors set forth in 42 Pa.C.S. § 9771.[1] *Commonwealth v. Ferguson*, 2006 PA Super 18, 893 A.2d 735, 737 (Pa. Super. 2006). Under 42 Pa.C.S. § 9771(c), a court may sentence a defendant to total confinement subsequent to revocation of probation if any of the following conditions exist: (1) the defendant has been convicted of another crime; or (2) the

-13-

conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or (3) such a sentence is essential to vindicate the authority of the court. *See also Commonwealth v. Coolbaugh*, 2001 PA Super 77, 770 A.2d 788 (Pa. Super. 2001).

Our appellate courts have repeatedly acknowledged the very broad standard that sentencing courts must use in determining whether probation has been violated: "A probation violation is established whenever it is shown that the conduct of the probationer indicates the probation has proven to have been an ineffective vehicle to accomplish rehabilitation and not sufficient to deter against future antisocial conduct." *Commonwealth v. Brown*, 503 Pa. 514, 469 A.2d at 1376 (1983) (citing *Commonwealth v. Kates*, 452 Pa. 102, 305 A.2d 701 (1973); and *Commonwealth v. Burrell*, 497 Pa. 367, 441 A.2d 744 (1982)).

Importantly, the Superior Court has explained that "it is clear that the effectiveness of probation as a rehabilitative tool and as a deterrent to antisocial conduct is the lens through which a violation is to be viewed. Revocation and resentencing are warranted if, in the face of a new criminal act or the violation of a condition of probation, the court finds that probation is no longer achieving its desired aims of rehabilitation and deterring criminal activity." *Commonwealth v. Foster*, 214 A.3d 1240, 1251 (Pa. 2019); *See e.g., Brown*, 469 A.2d at 1376 (holding that the Commonwealth cannot establish probation violation where defendant was acquitted of the charges that constituted the alleged VOP). A court never reaches this question unless there is a violation of a specified term of the probation order or the probationer commits a new crime. *Foster*, 214 A.3d 1240, 1251.

Furthermore, the Commonwealth need only demonstrate that the probationer had violated a specified term of probation or committed a new crime by a preponderance of the evidence. *Commonwealth v. A.R.*, 2010 PA Super 4, 990 A.2d 1 (Pa. Super. 2010) (considering the positive

drug tests and Appellant's concession to the technical violations, the evidence was enough to support the revocation sentence imposed by the court); *See Young v. Com. Bd. of Probation and Parole*, 487 Pa. 428, 437, 409 A.2d 843, 848 (1979) (holding that the Board properly denied a parolee credit on his sentence for time spent on parole where his "street time" was marked with delinquency and failure to comply with conditions of parole).

In the instant matter, Appellant alleged error formed from the factual finding that Appellant had violated the terms and conditions of his probation and asserted that there had been insufficient evidence presented at the violation hearing to support this determination; specifically, that insufficient evidence existed to support technical violations for Fleeing/Eluding and REAP. Interestingly, had denied his involvement with riding the ATV within the Post Sentence Motions Apparently, he had forgotten his prior testimony that had included that recorded specific admission under oath. This Court had refreshed everyone's memory and corrected the record misstatement with the transcribed hearing notes. Additionally, Appellant challenged his sentence by broadly averring that the aggregate sentence had resulted in an abuse of the trial court's discretion. These arguments again were in direct conflict with the transcribed record that had reflected ample evidence of various forms of Appellant's violating behavior and that the respective Orders and Judgements of Sentences had been reasonably imposed after thorough review of all relevant sentencing factors.

Appellant has a known Commonwealth of Pennsylvania juvenile record of four (4) arrests, though none of those arrests resulted in an adjudication of delinquency or commitment. As a thirty-one-year-old adult, Appellant has amassed thus far twelve (12) arrests, which had resulted in in three (3) convictions and five (5) commitments. Additionally, he has incurred five (5) violations

-15-

of probation or parole so far as an adult, which has resulted in three (3) revocations of said sentence. Philadelphia County Prison records reflect one misconduct while incarcerated.

Moreover, as noted by this Court, the presentence investigator reasonably opined that based upon Appellant's criminal history and the violating conduct that had been habitually committed, Appellant would not by amenable to community supervision because he is at a significant risk for incurring future offenses. This Court shared the same conclusion upon fair review of all data presented. While on various forms of probation, Appellant had incurred several direct and technical forms of violations. Appellant's history of illegal narcotic use was also referenced.

It is worth noting that Appellant's admitted technical violation for failing a drug test by testing positive for cocaine on November 19, 2019 had constituted a singular sufficient reason to revoke Appellant's probation. Under 42 Pa. C.S.A. § 9771, a sentencing court "may increase the conditions, impose a brief sanction under section 9771.1 (relating to court-imposed sanctions for violating probation) or revoke an order of probation upon proof of the violation of specified conditions of the probation." During his original guilty plea and sentencing hearing on September 17, 2018, Appellant was specifically told that a term of his probation was to not use any drugs whatsoever, and he was warned of the consequences if he failed to comply:

> **THE COURT:** Here's what you need to understand, Mr. Clausell. Is that number one, I will accept these very generous negotiations but with one word of caution. You deviate from any particular line in any way, shape or form, I can hold you up to 30 years, and there have been occasions where I have done just that without blinking an eye. I say that not to scare you, sir, but to give you a dose of reality. Because thus far the path that you're going is going to cause you to end up being in a box either below ground or above...
>
> It is a condition of my sentence, sir, that you obtain and maintain legitimate employment. You are going to have random home checks and vehicle checks for drugs and/or weapons. You cannot be in a vehicle or in a residence with any drugs or weapons. I don't care if you're driving or not. You're going to have random analysis for drugs and/or alcohol in your system. First hot urine, you come back to

me. If there's a drug problem, tell us now because we can get you treatment. If there's not and something comes up hot, you're going to have more of a problem. You are to speak to your probation officer and obtain whatever vocational training you can get your hands on.

(N.T. 9/17/18, p. 16-17).

Thus, even without the direct testimonial evidence from the surveilling police officer as to his observations of Appellant's participation in illegally and dangerously driving an ATV throughout the streets of Philadelphia, the violation had been demonstrated by a preponderance of evidence. Appellant's reported violating conduct that had been committed during the probationary period following release from confinement unequivocally reflected Appellant's continued risk of recidivism and danger to the community.

Not only did Appellant violate the terms and conditions of his probation by using cocaine and not reporting, he also violated by partaking in dangerous criminal activity on May 15, 2020. Although Appellant had not yet been or may never be formally convicted of the outstanding criminal charges, of Fleeing/Eluding and REAP, the officer's independent credible testimony provided enough evidence that Appellant had again violated the terms of his probation. The Commonwealth must only prove the violation by a preponderance of the evidence and, once it does so, the decision to revoke parole is a matter for the court's discretion. *Commonwealth v. Kalichak*, 943 A.2d 285, 290-91 (Pa. Super. 2008). That burden was met.

After the GAGNON evidentiary hearing held on July 8, 2021, this Court determined that Appellant "presents an identifiable threat to public safety" because his conduct "indicates that it is likely that he will commit another crime if he is not imprisoned." 42 Pa. C.S.A. § 9771. Thus, an increased sentence was essential to vindicate this Court's authority. Id.

Historically and contextually, it is important to comprehend that the violations at issue had occurred after Appellant had been granted an extremely merciful negotiated sentence. Appellant

-17-

had benefited greatly from the generous negotiations that had ensued. The rehabilitation efforts were additionally reflected in this Court's grant to him of waive of ineligibility of the state supervised early release Boot Camp program. However, Appellant's conduct following his grant of early custodial release evidenced his defiant unabated intention to commit crimes and to defy this Court's authority to the detriment of our society. Vindication of the trial court's authority was essential. While under supervision, Appellant tested positive for cocaine and recklessly drove throughout the streets of Philadelphia on an ATV while being chased by Philadelphia police. His conduct was most deplorable and indicated a disrespect of the Court's authority, a likely risk of recidivism, and a complete disregard for the value of the human lives of his fellow Philadelphians.

Because of the foregoing reasons, the argument for the imposition of another period of probation lacks prudence. Appellant flagrantly disregarded this Court's authority and ignored all directives when this Court had imposed the original negotiated merciful sentences in 2017. This Court's original Order and Judgement of Sentence had reflected a sentence at the very bottom range of the recommended sentencing guidelines. When this Court had entered the original sentence, Appellant had convinced this Court that he had obtained and maintained legitimate employment and was on the straight and narrow path to sobriety and legal conduct. Hence, this Court provided due warnings that any violation would not be tolerated. The subsequently reported violating conduct sufficiently confirmed the need to vindicate the authority of this Court that had been repeatedly and blatantly flouted.

Finally, under Pennsylvania law, a challenge to the validity of a sentence is a challenge to its legality. *Commonwealth v. Starr*, 2020 PA Super 147, 234 A.3d 755, 764, *appeal denied*, 243 A.3d 724 (Pa. 2020). If a court does not possess statutory authorization to impose a particularized sentence, then the sentence is illegal and must be vacated. *Commonwealth v. Thier*, 663 A.2d 225,

229 (Pa. Super. 1995), *appeal denied*, 670 A.2d 643 (Pa. 1996). If no statutory authorization exists for a particular sentence, then that sentence is illegal and subject to correction. *Thier, supra*. An illegal sentence must be vacated. *Commonwealth v. Kratzer*, 660 A.2d 102, 104 (Pa. Super. 1995), *appeal denied*, 670 A.2d 643 (Pa. 1996).

Upon sentencing following revocation for probation, the trial court is limited only by the maximum sentence that could have been imposed at the time of the issuance of the probationary sentence. *Commonwealth v. Coolbaugh*, 770 A.2d 788, 792 (Pa. Super. 2001). It is common knowledge that the revocation sentence may not exceed the statutory limits of the originally imposed sentence, including allowable deductions for custody time served. *Id.*

In the underlying case, Appellant had entered to negotiated guilty pleas to two offenses: (1) Manufacture, Delivery, Possession with Intent to Manufacture or Deliver, as an ungraded felony, under 35 § 780 §§ A30; and (2) Possession of a Firearm Prohibited, as a first degree felony, under 18 § 6105 §§ A1. The maximum period of incarceration for the ungraded felony drug offense is ten (10) years and the maximum period of incarceration for the first-degree felony firearm offense is twenty (20) years. Thus, the statutorily allowed maximum aggregate period of confinement was thirty (30) years. In contrast, Appellant's total aggregate sentence following violation of probation was limited to three (3 )years to six (6) years of state supervised term confinement, followed by three (3) years of reporting probation, which had been well under the permitted maximum period. In summary, Appellant has not borne his burden of establishing that he received an illegal sentence, since he had failed to demonstrate any abuse of discretion.

-19-

## IV.    CONCLUSION

As Appellant's arguments lack any legal or factual merit, the imposed Orders and Judgements of Sentence in each of the above-captioned cases constituted reasonable exercises of judicial sentencing discretion.

After careful review of the entire record, no harmful, prejudicial, or reversible error was detected that would justify the granting of Appellant's request for relief. For the reasons set forth above, the Order and Judgment of Sentence should be affirmed.

BY THE COURT:

DATE: 9/20/2021

ANNE MARIE B. COYLE, J.

-20-